UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America ex rel. Lee Smith, | ) ) ) | No. 12 C 7682 |
| Petitioner, | ) ) | |
| v. | ) ) | Judge Thomas M. Durkin |
| Rick Harrington, Warden, Menard Correctional Center, | ) ) ) ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Lee Smith, a state prisoner serving prison terms for two counts of criminal sexual assault, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. R. 1, 11, 13, 14. Respondent Rick Harrington[1] answered the petition, arguing that the petition should be denied because the claims raised in it are procedurally defaulted. R. 30. The petition is denied, and the Court declines to issue a certificate of appealability.

---

[1] Smith initially named as respondent Donald Gaetz, the warden of Pinckneyville Correctional Center, where Smith was incarcerated when he filed his § 2254 petition. *See* Rule 2(a) of the Rules Governing Section 2254 Cases. Rick Harrington is now the warden of Menard Correctional Center where Smith currently resides. Accordingly, Warden Harrington is substituted as the proper respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("[T]he proper respondent is the warden of the facility where the prisoner is being held."); *see also Bridges v. Chambers*, 425 F.3d 1048, 1049 (7th Cir. 2005).

## Procedural History

The following evidence was presented at Smith's bench trial.[2] In August 2008, Smith was dating Yvonne Smith (the two had been dating for five years and were of no relation), the mother of T.S., who at the time was 17 years old. R. 30, Exh. N at 110, 112; *see also id.* at 212, 227. On the day in question, Smith learned that T.S. had sexual intercourse with a boy from the neighborhood and came home from work to speak with her. *Id.* at 117, 156. When Smith arrived home, he took T.S. upstairs to the bedroom that he and Yvonne shared, closed the door, and pushed T.S. onto the bed. *Id.* at 120-22. T.S. tried to escape, but Smith refused to let her leave. *Id.* at 121-22, 155-56. He then pulled off her pants and underwear, and twice inserted his fingers inside her vagina to see if she had sperm inside her. *Id.* at 121-24, 126-28, 161. Smith then licked her vagina for about 30 minutes and then "finger[ed]" her. *Id.* at 127-30, 162. Afterwards, Smith told T.S. that he was going to take her to the police station; he then grabbed her by the hair, dragged her down the stairs, and pulled her by her shirt out of the house and into his van. *Id.* at 134-37, 228, 233.

At this point, the police arrived, and the responding officer observed Smith holding T.S. by her left arm and T.S. trying to pull away from him. *Id.* at 139, 208. T.S. told police that Smith had molested her. *Id.* at 139, 209. While the responding officer was speaking with T.S., Smith blurted out, "I'm not going to lie. I did check

---

[2] 28 U.S.C. § 2254(e)(1) cloaks the state court's factual findings in a presumption of correctness. That presumption may be rebutted only by clear and convincing evidence. *Id.* Smith has failed to bring forth such evidence. Accordingly, the state court's factual findings are presumed correct.

her to see if she had sex tonight." *Id.* at 209. When the officer asked Smith to explain that comment, Smith responded that "he was checking her to see if she had sex, that he pulled her clothes off, and [that he] stuck his hand down her vagina." *Id.* at 211. T.S. was transported to the hospital, and Smith was taken into custody. *Id.*

At the police station, Smith told the officer that when he confronted T.S., she denied having sexual intercourse, and they began to argue. *Id.* at 212. He again admitted to pulling off T.S.'s clothes and putting his hand in her vagina. *Id.* at 212-13. Smith also admitted that it was possible that his fingers had penetrated her vagina because T.S. was struggling with him at the time. *Id.* at 215. Smith explained that he had a "very keen sense of smell," that he had a "unique ability to smell and determine if a woman [had] recently had sex," and that his sense of smell was better if his mouth was open and his tongue out. *Id.* at 213, 217. Smith told police that when T.S. was on the bed, he put his face on her thigh close to her vagina and smelled her vagina to discern whether T.S. had in fact had sex earlier that night. *Id.* at 213-14. Smith acknowledged that at this time, his tongue was out, but he was not sure whether during the struggle his tongue had touched T.S.'s vagina. *Id.* at 214. Smith admitted, however, that such contact was possible. *Id.* DNA testing revealed Smith's DNA on the outside of T.S.'s vagina. *See id.* at 100; Exh. O at 283, 291, 295.

The state trial court found Smith guilty on all four counts of criminal sexual assault. R. 30, Exh. D at 4; Exh. M at 103; Exh. O at 306. The trial court merged

3

two of the sexual assault counts, and then sentenced Smith to two consecutive prison terms of five years. *Id.*, Exh. D at 4; *see* Exh. O at 325.

On direct appeal to the state appellate court, Smith argued that the trial court violated his due process rights by failing to independently evaluate whether he was fit to stand trial. R. 30, Exhs. A & C. The state appellate court rejected this argument and affirmed Smith's convictions and sentences. *Id.*, Exh. D at 7.

Smith then petitioned for rehearing and retrial in the state supreme court. *Id.*, Exh. E. The state supreme court construed this petition as a petition for leave to appeal ("PLA"). *Id.*, Exh. F. Smith alleged in his PLA that the State had failed to prove him guilty beyond a reasonable doubt and that the prosecution and police had tampered with evidence. *Id.* The state supreme court denied Smith's PLA and the motion for leave to file a motion to reconsider that followed. *Id.*, Exhs. G, H, & I. The motion for leave additionally raised the claims that: (1) Smith's arrest was illegal; (2) the prosecution and police tampered with witnesses and evidence; (3) the testifying officers committed perjury; (4) trial counsel was ineffective for failing to present evidence of his innocence and the prosecution's misconduct; and (5) appellate counsel was ineffective for failing to raise these arguments on direct appeal. *Id.*, Exh. H. Smith did not petition for a writ of certiorari in the United States Supreme Court. R. 1 at 2.

While his direct appeal was pending, Smith began sending correspondence to the state trial court. The court construed this correspondence as an attempt by Smith to pursue state postconviction relief. R. 30, Exh. J at 13; Exh. K; *see also* Exh.

L. From these letters the following claims can be gleaned: (1) Smith is actually innocent; (2) trial counsel, the prosecution, the police, and possibly the trial judge were involved in a conspiracy to convict Smith; (3) various witnesses committed perjury; and (4) the trial court imposed an improper sentence. *Id.*, Exh. K. The state trial court, after construing Smith's letters as a postconviction petition, denied relief, *id.*, Exh. L, and Smith declined to appeal the trial court's judgment, R. 1 at 3.³

This Court received Smith's § 2254 petition on September 25, 2012. R. 1. In that petition, Smith alleged that: (1) trial counsel was ineffective for failing to (a) object to certain statements made by the prosecution in closing arguments; (b) challenge the legality of his arrest and the validity of the DNA testing; (c) object to the admission of the victim's clothing into evidence; and (d) challenge the sufficiency of the evidence to sustain his convictions; (2) appellate counsel on direct appeal was ineffective for failing to raise the claims that: (a) Smith's arrest was illegal; (b) the DNA testing was fraudulent; and (c) the arresting officer gave false reports and suppressed evidence; (3) Smith's arrest was illegal; and (4) the prosecution "denied [his] rights" by not allowing the trial judge to view video recordings of him and the victim, which, according to Smith would have demonstrated that the DNA testing

---

³ A review of Smith's state court records demonstrates that following the dismissal of his postconviction petition, he continued to send correspondence to the trial court and file pro se pleadings, including another postconviction petition and a petition for relief from judgment pursuant to 735 ILCS 5/2-1401. R. 30, Exh. J at 13-27. The records demonstrate that the state trial court denied Smith relief, *id.*, and counsel for the Warden has confirmed that Smith failed to appeal any of the court's rulings denying relief, R. 30 at 5. Indeed, counsel for the Warden has confirmed that Smith has not pursued any appellate relief other than his direct appeal. *Id.*

5

was false and his arrest illegal. R. 1 at 5, 8-15. Smith filed an amended petition and a second amended petition, R. 11, 14, and a "Motion for Habeas Relief," which raises an additional challenge to the sufficiency of the evidence to sustain his convictions, R. 13.

## Analysis

**I. Smith Claims Are Procedurally Defaulted, And There Are No Grounds To Excuse His Defaults.**

The Warden argues that the claims that Smith raises in his § 2254 petition are procedurally defaulted and that there are no grounds to excuse the default of those claims.[4] A claim is procedurally defaulted if it was not fairly and properly presented in state court through one complete round of the State's established appeals process. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008) (to preserve claim for federal habeas review, habeas petitioner must "assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in postconviction proceedings") (internal quotation marks omitted); *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (completing one round of the State's appellate review process in Illinois means that habeas petitioner "must have . . . appealed to the Illinois Appellate Court and presented the claim in a petition for leave to appeal to the Illinois Supreme Court").

---

[4] The Warden concedes that Smith's claims are timely and that they are not barred by non-retroactivity principles. R. 30 at 6.

6

None of Smith's current habeas claims were preserved in one complete round of his direct appeal proceedings or his postconviction proceedings. In his direct appeal, Smith argued that the trial court violated due process by failing to make an independent evaluation of his fitness to stand trial. *See* R. 30, Exhs. A, B, & C. Rather than appealing the state appellate court's judgment denying that specific claim, Smith chose to raise a number of new claims for the first time in his ensuing PLA to the state supreme court. *Id.*, Exh. E. Accordingly, Smith did not raise any of his habeas claims through one complete round of his direct appeal proceedings.

The same holds true for Smith's postconviction round. Smith, through his correspondence to the state trial court, filed a postconviction petition, and even if he raised his current habeas claims in that petition, he defaulted those claims by failing to appeal the dismissal of his claims to the state appellate court and the state court supreme court in a postconviction appeal. Because Smith has exhausted his state court remedies without properly asserting his federal habeas claims at each level of state court review—either on direct appeal or in his postconviction proceedings—his claims are procedurally defaulted. *See Malone*, 538 F.3d at 753.

Smith's claims are procedurally defaulted on federal habeas review unless he can show cause and prejudice to excuse the default, or demonstrate that he is actually innocent, so that the failure to consider the defaulted claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009); *see also House v. Bell*, 547 U.S. 518, 536 (2006); *Schlup v. Delo*, 513 U.S. 298, 321 (1995). Smith cannot

demonstrate either. To demonstrate "cause," a habeas petitioner must show that "some objective factor external to the defense impeded [his] efforts" to pursue his claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Smith v. McKee*, 598 F.3d 374, 383 (7th Cir. 2010). And to satisfy the "prejudice" component, the petitioner "must 'shoulder the burden of showing . . . that the errors at his trial . . . worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1050 (7th Cir. 2001) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis omitted).

Smith notes briefly in his "Petition To Ask For Understanding Of Laws" that his counsel on direct appeal was ineffective for failing to raise claims regarding his "wrongful arrest, denial of an investigation, suppression of vital evidence, entering of false DNA facts, and ineffective counseling." R. 41 at 4-5. To the extent that Smith argues that his direct appeal counsel's ineffective assistance acts as cause to excuse the default of his current habeas claims, that argument fails because Smith failed to preserve his ineffective assistance of direct appeal counsel claim through one complete round of state court review. *See Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009) ("[T]he assertion of ineffective assistance as a cause to excuse procedural default in a § 2254 petition, is, itself, a constitutional claim that must have been raised before the state court or be procedurally defaulted.") (internal quotations marks omitted).

Smith offers two reasons for his failure to appeal the dismissal of his postconviction petition and pursue his claims through one complete round of state postconviction review. According to Smith, he did not appeal the dismissal to the state appellate court because the "[p]etition was sent back saying [it was] not filed," and he failed to appeal to the state supreme court because he "fe[lt] that the Courts of Illinois are refusing to change the ruling of Judge Amy Bertiani [the trial judge], because she is a female and they [are] ignoring the fact that [his] constitutional rights were violated." R. 1 at 5; R. 11 at 5; R. 14 at 5. Even if the Court were to credit Smith's allegation that his petition was returned to him (he does not further elaborate on what the contents of the petition were), Smith does not explain what, if any, further efforts he made regarding this petition. Nor does Smith's explanation of why he did not pursue an appeal regarding the dismissal of his postconviction petition or the alleged failure of the state appellate court to consider his petition to the state supreme court ultimately demonstrate how "some objective factor external to [his] defense" impeded his ability to pursue relief in the state supreme court. Having failed to demonstrate cause, the Court declines to excuse Smith's defaults.

To the extent that Smith advances a claim of actual innocence to excuse the default of his habeas claims, he fails to provide the requisite "'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial'" necessary to make out a claim for actual innocence. *House*, 547 U.S. at 537 (quoting *Schlup*,

513 U.S. at 324).[5] The Supreme Court recently reiterated the very high hurdle that habeas petitioners must clear to pass through the actual innocence gateway to excuse the procedural default of a habeas claim: "tenable actual-innocence gateway pleas are rare," and the standard by which actual innocence gateway pleas are judged is "'demanding' and seldom met." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013) (quoting *House*, 547 U.S. at 538). Confirming the standard for judging actual innocence gateway claims set forth in *Schlup v. Delo*, 513 U.S. 298, 329 (1995), the Court held that "a [habeas] petitioner does not meet the threshold requirement [to clear that gateway] unless he persuades the district court in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 133 S. Ct. at 1928 (quoting *Schlup*, 513 U.S. at 329).

The Warden argues that Smith offers no new evidence in support of his actual innocence claim, but instead rests his claim of innocence on his insistence that the trial testimony and DNA evidence was either false or wrongly interpreted by the state trial court. True, and when Smith's (not new) evidence in support of his actual innocence claim is weighed against the trial testimony of T.S. and Smith's admissions to police that he might have licked and digitally penetrated T.S.'s

---

[5] Since the filing of his initial § 2254 petition, R. 1, Smith has amended that petition twice, R. 11, 14, filed a "Motion for Writ of Habeas Corpus," R. 13, and has filed numerous "petitions," "motions," and letters. R. 17, 18, 19, 25, 27, 28, 29, 32, 35, 37, 38, 39, 40, 41, 42. To the extent these pro se filings supplement Smith's claim of actual innocence, the Court has considered them in deciding the merits of that claim.

10

vagina while they struggled, the Court finds that Smith evidence is not so credible, conclusive, or "strong that a court cannot have confidence in the outcome of the trial." *McQuiggin*, 133 S. Ct. at 1936 (quoting *Schlup*, 513 U.S. at 316).

In sum, because Smith failed to raise his habeas claims in one complete round of state court review, they are procedurally defaulted. Further, Smith has failed to clear *McQuiggin*'s very high hurdle necessary to pass through the actual innocence gateway and excuse the default of his claims. Smith's defaults will therefore be enforced.

## II.     A Certificate of Appealability Is Denied.

Finally, Rule 11(a) of the Rules Governing § 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability, a habeas petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). And where a petition is disposed of based on a procedural bar, without reaching the merits of the underlying constitutional claims, a certificate of appealability should issue only if reasonable jurists would find the adjudication of the antecedent procedural ruling "debatable." *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000); *see also Lavin*, 641 F.3d at 832. Because the procedural default of Smith's claims is not debatable, the Court denies certification of them for appellate review. *See Slack*, 529 U.S. at 584 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude

either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted.").

## Conclusion

For the foregoing reasons, Smith's claims are procedurally defaulted, and there are no grounds to excuse his defaults. Accordingly, his § 2254 petition is denied, and the Court declines to issue a certificate of appealability. Smith's "Motion for Writ of Habeas Corpus," R. 13, and "Motion for Speedy Trial," R. 17, are denied. Smith's motions to "Enter Extra Fact to Habeas Corpus," R. 25, 27, and petition to "Enter Fact of Trial Documents," R. 42, are granted (the Court considered these facts and documents in deciding Smith's § 2254 petition). And Smith's remaining pending motions, R. 28, 32, 37, 38, 39, are denied as moot.

ENTERED:

*Thomas M Durkin*

Thomas M. Durkin
United States District Judge

Dated: September 19, 2013